# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CARL D. HAYDEN,

    Appellant,

      v.

DEPARTMENT OF THE AIR FORCE,

    Agency.

DOCKET NUMBER
CH-4324-13-0534-I-1

DATE: December 4, 2014

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Matthew D. Estes</u>, Esquire, and Neil A.G. McPhie, Esquire, Arlington, Virginia, for the appellant.

<u>Daniel J. Dougherty</u>, <u>Michael Ahl</u>, and <u>Michael J. Raming</u>, Wright-Patterson Air Force Base, Ohio, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1     The appellant has filed a petition for review of the initial decision, which denied his request for corrective action under the Uniformed Services

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Employment and Reemployment Rights Act of 1994 (USSERA). For the reasons discussed below, we VACATE the initial decision, still DENYING the appellant's request for corrective action.

¶2    The appellant, a member of the Air Force Reserve, began his work as a Protocol Specialist, GS-9, in 2002, at the Wright-Patterson Air Force Base Protocol Office for B Flight.[2]  Initial Appeal File (IAF), Tab 7 at 1.  He transferred to A Flight on June 20, 2010, taking on added responsibilities, including support of the Air Force Security Assistance Center (AFSAC).[3]  IAF, Tab 15, Exhibit (Ex.) 9.  The agency upgraded the appellant's position to GS-11 because he acquired new duties during the transfer.  IAF, Tab 6, Subtab 2h.

¶3    The B Flight Protocol Office lost two GS-12 positions in November 2011. IAF, Tab 7 at 1.  The employees in those positions were declared as "surplus," or employees who were not working in permanently authorized positions.  *Id.*; Hearing Compact Disc (HCD) (testimony of Jones); IAF, Tab 6, Subtab 2g at 1-2. One of these employees was subsequently placed in another position.  IAF, Tab 6, Subtab 2g at 3. The other surplus employee became a mandatory placement priority and was still in that status when the appellant filed the petition for review.  IAF, Tab 7 at 1; Petition for Review (PFR) File, Tab 7 at 6.

¶4    On March 26, 2012, the appellant's immediate supervisor submitted a request to upgrade his position to GS-12, based on accretion of duties at the higher grade level.  IAF, Tab 7 at 1; *see* IAF, Tab 6, Subtab 2f at 1-4.  To justify the upgrade, his supervisor wrote:

> Over abundance [sic] of events to work and not enough GS-12's to perform the duties.  Often assign Carl events that are above GS-11

---

[2] The base is located on two geographically noncontiguous tracts of land, Area A and Area B.  The Protocol Office is divided into two branches, each of which serves an area of the base.  *See* IAF, Tab 15, Ex. 8.  The B Flight Protocol Office supports Area B. *See* PFR File, Tab 7 at 5.

[3] AFSAC hosts high-level foreign delegations and requires protocol support for complex events.  *See* HCD (testimony of Chambers); IAF, Tab 14 at 37.

duties due to both requirements and to develop his growth. He is working above his pay grade and has shown he is capable of performing at a GS-12 grade level.

IAF, Tab 14 at 21.

¶5 On March 30, 2012, the appellant received military orders for Reserve duty commencing April 10, 2012. IAF, Tab 7 at 1; *see* IAF, Tab 6, Subtabs 2d-2e, Tab 14 at 16-20. The appellant's duty was extended in July 2012. IAF, Tab 6, Subtab 2c, Tab 14 at 18-20, Tab 15, Ex. 7. On May 1, 2012, a human resources position classifier notified the appellant's supervisor that she needed to conduct a desk audit before upgrading the appellant's position. IAF, Tab 7 at 1. She explained that she needed to interview the appellant in person during the audit, and she was unable to do so while he was on extended active duty. *Id.* at 1-2; HCD (testimony of Chambers, Hess). The appellant's supervisor notified him that the upgrade had been cancelled because he was in nonpay status, but "[o]nce [you] return in January we will re-engage!" IAF, Tab 14 at 28; *see id.* at 30. In July 2012, protocol support duties for AFSAC were transferred from the A Flight Protocol Office to another unit. HCD (testimony of Chambers).

¶6 The appellant returned to his GS-11 position on December 20, 2012. IAF, Tab 6, Subtab 2b, Tab 7 at 2, Tab 14 at 20. He received a within-grade increase; however, his supervisor did not resubmit the request to upgrade his position. HCD (testimony of appellant, Chambers); PFR File, Tab 7 at 6. He testified that she was unable to explain why the upgrade was not being processed. HCD (testimony of appellant). He performed additional Reserve duty from March 4, to March 8, 2013. IAF, Tab 14 at 12. He subsequently met with his supervisor on March 13, 2013, and inquired about whether she would resubmit the request. *Id.*; HCD (testimony of appellant). During that conversation, he alleged, she informed him that she did not recommend his promotion because he had been absent too often for his Reserve duties. IAF, Tab 14 at 12; HCD (testimony of appellant). The appellant immediately sought assistance from the base Employer

Support of the Guard Reserve (ESGR) office.  *See* IAF, Tab 14 at 29; *see also* IAF, Tab 15, Ex. 6.

¶7    The appellant met with his supervisor and the base Chief of Protocol the following day.  IAF, Tab 14 at 12.  At the meeting, he recounted, his supervisor advised him to keep her better apprised of his upcoming Reserve obligations by providing her with a 90-day calendar that showed potential Reserve assignment dates.  *Id.*; *see* HCD (testimony of appellant); *see also* IAF, Tab 6, Subtab 2a at 2.  He recounted that his supervisor and the Chief of Protocol also told him at the meeting that they would reevaluate his suitability for promotion within 90 days.  *See* IAF, Tab 14 at 12; *see also* IAF, Tab 6, Subtab 2a at 1, Tab 15, Exs. 4-5.  During the meeting, the Chief of Protocol raised concerns about his performance that, he alleged, had never been raised before, though he admitted at the hearing that the concerns did not lack foundation.  HCD (testimony of appellant).  We note here that the appellant's most recent performance appraisal dated January 7, 2013, showed his overall rating as "outstanding."  IAF, Tab 14 at 22-24.

¶8    On May 20, 2013, the appellant received a performance feedback memorandum, which stated that he was no longer working at the GS-12 level.  IAF, Tab 6, Subtab 2a, Tab 7 at 2, Tab 14 at 12, Tab 15, Ex. 5.  The agency did not subsequently request an upgrade to the appellant's position.  HCD (testimony of Chambers, Curell).  In August 2013, however, the agency promoted another Protocol employee to GS-12.  IAF, Tab 14 at 36.  That employee is not a Reservist.  *Id.* at 12.  The appellant filed this appeal.  IAF, Tab 1.

¶9    The appellant alleged USERRA violations under three different legal theories.  *See* IAF, Tab 19 at 5-6.  He primarily argued that the agency denied him a benefit of employment by not promoting him because of his service in the Air Force Reserve.  *Id.* at 5; IAF, Tab 5 at 4; *see* 38 U.S.C. § 4311(a).  He also argued that the agency denied him a benefit of reemployment in the position he would have attained had the agency processed the position upgrade.  IAF, Tab 5 at 4, Tab 19 at 5-6; *see* 38 U.S.C. §§ 4312, 4313(a), 4316.  Finally, he alleged

that the agency retaliated against him after he sought to enforce the protections that USERRA afforded.  IAF, Tab 5 at 4, Tab 19 at 6; *see* 38 U.S.C. § 4311(b), (c).  The agency argued that organizational restructuring in July 2012, while the appellant was on Reserve duty stripped the A Flight Protocol Office of its duties related to AFSAC, reducing the number of GS-12 Protocol Officers needed for handling complex events.  IAF, Tab 7 at 2.  Additionally, the agency explained, it could not have placed the appellant in a GS-12 position without allowing other Protocol Officers at the GS-11 level to compete for the position.  It was also obligated to place the remaining "surplus" GS-12 employee. *Id.* at 1-3.

¶10        After a videoconference hearing, the administrative judge denied the appellant's request for corrective action, finding that he had not shown by preponderant evidence that his military service was a substantial or motivating factor in the agency's failure to promote him.  IAF, Tab 20, Initial Decision (ID) at 3-4.  The administrative judge further found that the appellant's promotion would not have been guaranteed even if he had been available for a desk audit, so he thus was not disadvantaged by his absence.  ID at 4.  The administrative judge likewise found that the appellant did not show that the agency's decision not to process the position upgrade during his absence was motivated or otherwise connected to his military service.  ID at 4.  Finally, the administrative judge found that the appellant failed to meet his initial burden of proof on the issue of retaliation.  ID at 4.

Discrimination Claim

¶11        In an appeal filed under 5 U.S.C. § 4311(a), the appellant bears the initial burden of showing by preponderant evidence that his military service was a substantial or motivating factor in the agency's adverse employment decision. *See Sheehan v. Department of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001).  After the appellant meets that burden, the burden shifts to the agency to show by preponderant evidence that it would have taken the same action anyway, for a

valid reason. *Id.* at 1013. To establish that his military service was a substantial or motivating factor in an adverse employment decision, an appellant must show that the agency "relied on, took into account, considered, or conditioned its decision" upon his military-related absence or obligation. *Erickson v. U.S. Postal Service*, 571 F.3d 1364, 1368 (Fed. Cir. 2009). However, USERRA does not require that discrimination on the basis of military service be the *sole* motivating factor for an adverse employment action. *Id.* at 1369 (citing H.R. Rep. No. 103-65, at 24, *reprinted in* 1994 U.S.C.C.A.N. 2449, 2457).

¶12    An appellant may meet his burden of proof with direct or circumstantial evidence. Where there is no significant contrary proof, circumstantial evidence can constitute proof of discrimination by preponderant evidence. *See Smith v. U.S. Postal Service*, 69 M.S.P.R. 420, 425 (1996). Discriminatory motivation under USERRA may be reasonably inferred from such circumstantial evidence as temporal proximity between the appellant's military activity and the adverse employment action, "inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the [individual's] military activity, and disparate treatment of certain [individuals] compared to other [individuals] with similar work records or offenses." *Gossage v. Department of Labor*, 118 M.S.P.R. 455, ¶ 12 (2012) (quoting *Sheehan*, 240 F.3d at 1013). The Board may consider all record evidence, including the agency's explanation for the actions taken. *Sheehan*, 240 F.3d at 1014. The appellant must show, however, "evidence of discrimination other than the fact of non-selection and membership in the protected class." *Id.* at 1015.

¶13    The appellant argues that the administrative judge made erroneous findings of fact regarding whether he met his burden of proof. PFR File, Tab 5 at 9-18. The administrative judge concluded that:

> [t]he appellant produced no evidence whatsoever that his military service was considered adversely when the agency failed to promote

> him. There is no evidence of disparate treatment, professed antipathy toward military service, or inconsistent actions by the agency.

ID at 3. The appellant argues that this conclusion ignores the evidence that he presented during the hearing. PFR File, Tab 5 at 9-10. He cites specific examples of direct and circumstantial evidence of animus based on his military service, as well as evidence that might undermine the agency's stated reasons for not upgrading his position. *Id.* at 10-18. He further argues that, in reaching this conclusion, the administrative judge failed to make any findings regarding the credibility of witnesses. *Id.* at 20-24. Instead, he argues, the administrative judge simply accepted as undisputed fact the testimony of agency witnesses regarding both his burden of proof and that of the agency. *Id.*

¶14 The appellant's assertion that the administrative judge erred in concluding that he "produced *no* evidence whatsoever" in support of his burden of proof is correct. *See* ID at 3 (emphasis added). He has identified several specific examples of record evidence from which the administrative judge might have concluded that his Reserve service was a substantial or motivating factor in the agency's decision not to upgrade his position. *See Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133 (1980) (the petitioning party must explain why the challenged factual determination is incorrect, and identify the specific evidence in the record which demonstrates the error). He accurately points out that, although the administrative judge held a hearing and largely relied upon witness testimony, *see* ID at 2-4, the decision does not include any assessment of witness credibility, PFR File, Tab 4 at 20-24.

¶15 An initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests. *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980); 5 C.F.R. § 1201.111(b). In such

circumstances, the Board normally remands the appeal with instructions to the administrative judge to supply the missing credibility findings and analysis of the appellant's evidence. *See, e.g.*, *McMillan v. Department of Justice*, 120 M.S.P.R. 1, ¶¶ 22-23 (2013) (remanding where the administrative judge failed to resolve conflicting testimony and made the required credibility determinations). Here, the administrative judge has retired from federal service. Although the regional office could reassign the case to a new administrative judge, that judge would likely have to hold a hearing to make demeanor-based credibility findings. Nevertheless, credibility findings need not be based on the demeanor of witnesses, and the parties have had a full and fair opportunity to develop the record and argue the issues. The Board can thus adjudicate the appeal, and we believe that doing so best serves the interests of efficiency and justice.[4] *Cf., e.g.*, *Baldwin v. Department of Veterans Affairs*, 111 M.S.P.R. 586, ¶ 26 (2009); *Negron v. Department of Justice*, 95 M.S.P.R. 561, ¶ 9 (2004); *Gregory v. Federal Communications Commission*, 84 M.S.P.R. 22, ¶ 6 (1999), *aff'd*, 232 F.3d 912 (Fed. Cir. 2000) (Table).

¶16　　　The appellant asserts that he has met his burden "by showing that the Agency acted inconsistently with regard to the promotion, expressed hostility toward his military service, and through a showing that the denial of his promotion occurred almost simultaneously with his military leave." PFR File, Tab 5 at 12. We agree that the appellant established that his absences for Reserve duty were a motivating factor. The record shows a temporal link between the appellant's extended period of Reserve duty and the agency's decision not to upgrade his position. The appellant identified testimony that weakens the

---

[4] The agency asserts that cases like *Spithaler* and *Hillen v. Department of the Army*, 35 M.S.P.R. 453 (1987), are inapposite because they "were decided on entirely different grounds and at a different stage in litigation." PFR File, Tab 6 at 9. The agency's argument is unavailing. *See McMillan*, 120 M.S.P.R. 1, ¶ 22 (citing *Spithaler* as authority for remanding appeal so that the administrative judge could make additional credibility determinations).

agency's assertion that it did not consider his military absences in deciding not to process his position upgrade. For example, the appellant's supervisor testified that her other upgrade requests had been accepted, and she had been preparing him for promotion to GS-12 by giving him responsibilities at that grade level when she made the request. HCD (testimony of Chambers). She further testified that none of her prior position upgrade requests had required in-person desk audits. *Id.* She also testified that she had participated in a telephonic audit for the appellant's position upgrade to GS-11. *Id.* The position classifier who examined the upgrade request testified that she was aware of only about ten upgrade requests that had not been granted out of the hundreds she had processed. HCD (testimony of Hess). The appellant testified that his supervisor had been unable to explain to his satisfaction why the upgrade had not been processed after he returned from Reserve duty. HCD (testimony of appellant).

¶17    The appellant also identified possible hostility towards his absences for military service. He testified that, during the March 13, 2013 conversation with his supervisor, she informed him that his position had not been upgraded because he spent too much time out of the office for Reserve duties. HCD (testimony of appellant); IAF, Tab 14 at 12. He additionally explained that, for the first time, his supervisor required him to prepare a 90-day calendar showing potential Reserve obligations. *See* IAF, Tab 14 at 31; *see also* HCD (testimony of appellant). Although she denied his characterization of her remarks, the supervisor testified that "last minute" Reserve absences made the assignment of work more difficult and affected other employees' morale. HCD (testimony of Chambers).

¶18    The appellant further testified that he received negative feedback during the May 20, 2013 meeting unlike any feedback he had ever received. *See* HCD (testimony of appellant); *see also* HCD (testimony of Chambers). Such feedback, we note, was inconsistent with his prior performance evaluations. *See* IAF, Tab 14 at 22-24, Tab 15, Ex. 1. The agency's meeting notes from May 20, 2013,

are consistent with his assertions and show that the agency supervisors criticized his performance and expressed concern about the frequency and predictability of his Reserve activity. IAF, Tab 14 at 30-32; *see Hillen*, 35 M.S.P.R. at 458.

¶19        We infer from the evidence upon which the appellant relied that the agency considered his absences for Reserve duty when it decided not to process the upgrade request during his absence and not to pursue the upgrade upon his return. A finding of discrimination may be based upon such considerations. *See McMillan*, 120 M.S.P.R. 1, ¶ 14 (because the most significant and predictable consequence of reserve status with respect to the employer is the employee's absence from work, USERRA prohibits an employer from taking an adverse employment action based on the employee's use of or obligation to use military leave). "An employer cannot escape liability under USERRA by claiming that it was merely discriminating against an employee on the basis of his absence when that absence was for military service." *Erickson*, 571 F.3d at 1368. "[M]ilitary service is a motivating factor for an adverse employment action if the employer 'relied on, took into account, considered, or conditioned its decision' on the employee's military-related absence or obligation." *Id.* (citations omitted). When we weigh all of the evidence, we find that the agency considered the appellant's military absences to be problematic, and the absences were a motivating factor in the agency's failure to provide the position upgrade. The appellant thus met his burden of proof.

¶20        If an appellant meets his burden of proof, the agency may avoid liability by demonstrating by preponderant evidence that it would have taken the same action without considering his military service.[5] *Erickson*, 571 F.3d at 1368; *see*

---

[5] Shifting of the burden from the employee to the employer occurs in both "dual motive" cases, wherein the agency defends its actions on grounds that, even if an invalid reason played a part in the adverse action, the same action would have been taken in the absence of the invalid reason, and in the cases based on pretext, wherein the agency defends its actions on grounds that it acted only for valid reasons. *Sheehan*, 240 F.2d at 1014.

*Sheehan*, 240 F.3d at 1013; *see also Burroughs v. Department of the Army*, [120 M.S.P.R. 392](#), ¶ 5 (2013) (an agency violates section 4311(a) if it would not have taken the action but for the appellant's service). The agency argued that it was unable to complete the desk audit and process the upgrade because the appellant was unavailable and in nonpay status. IAF, Tab 7 at 1. When he returned, the agency explained, the nature of the Protocol Office's workload had changed, in large part because it was no longer supporting AFSAC events. *Id.* at 2. The agency further explained that it could not upgrade the appellant's position noncompetitively because: (1) there were two Protocol Specialists in the office (the appellant and another employee) who were in positions in which GS-11 was the full performance level, triggering a competition under the agency's regulations; and (2) even if the upgraded position were filled competitively, the GS-12 employees from B Flight who had been declared as surplus would have had internal priority over the appellant. *Id.* at 1-2. The appellant thus could not show he would have been placed automatically in the upgraded position or whether the position upgrade would have been approved. *Id.* at 2; *see* HCD (testimony of Chambers).

¶21     Quoting the Office of Personnel Management (OPM) Classifier's Handbook, the appellant asserts that a desk audit "is no more than a conversation for interview with the person in the job, *or with the supervisor of the position*, or with both . . . . to gain as much information as possible about the position." PFR File, Tab 5 at 17; IAF, Tab 15, Ex. 1 at 2 (emphasis added). However, the Classifier's Handbook also states that the desk audit is normally conducted at the worksite. IAF, Tab 15, Ex. 1 at 2. The appellant was away from the worksite at the time. Citing the position classifier's testimony, the appellant points out that the decision to conduct a desk audit was within the classifier's discretion. PFR File, Tab 5 at 17; *see* HCD (testimony of Hess). The position classifier also testified, however, that she normally conducted an in-person desk audit when the

upgraded position would have been at or above the GS-12 level.  HCD (testimony of Hess).

¶22 The appellant argues that OPM regulations allow agencies to upgrade positions noncompetitively through the accretion of duties.  PFR File, Tab 5 at 13-14; *see* 5 C.F.R. § 335.103(c)(3)(ii) ("Agencies may at their discretion except the following actions from competitive procedures of this section . . . (ii) A promotion resulting from an employee's position being classified at a higher grade because of additional duties and responsibilities . . . ."). Additionally, he argues, Air Force regulations allow for noncompetitive upgrade by reclassification.  PFR File, Tab 5 at 14; *see* Air Force Manual 36-203, Table 2.4 (located at IAF, Tab 6, Subtab 2m at 7-8); *see also* HCD (testimony of Driscoll).  The agency will do so when no other employee or position can absorb the duties detailed in the position upgrade request.  HCD (testimony of Driscoll). Although the position upgrade request specifically stated that "[n]o other positions could absorb" the duties that the appellant was performing, IAF, Tab 14 at 21, the agency presented credible evidence explaining why these GS-12 level duties no longer existed in A Flight after the appellant returned from Reserve duty, *see* HCD (testimony of Chambers); *see also* IAF, Tab 6, Subtab 1 at 1. Additionally, the agency presented credible testimony that two GS-12 positions in B Flight had been eliminated in November 2011.  *See* HCD (testimony of Curell); *see also* IAF, Tab 6, Subtab 1 at 1, Subtab 2g.

¶23 The appellant argues that another Protocol Office employee, a nonveteran, was promoted from GS-11 to GS-12 effective August 5, 2013.  PFR File, Tab 5 at 16; *see* IAF, Tab 14 at 36.  The record shows, however, that the full performance level for that employee's position is GS-12, *see* IAF, Tab 14 at 35-36, whereas the full performance level for the appellant's position is GS-11. The appellant was promoted to GS-11 after reclassification of his GS-9 position. *See* IAF, Tab 6, Subtab 2h.

¶24    Citing *Becwar v. Department of Labor*, the appellant additionally argues that the administrative judge improperly increased his burden of proof by requiring him to prove his entitlement to a position at the GS-12 level.  PFR File, Tab 5 at 18-19; *see Becwar v. Department of Labor*, 115 M.S.P.R. 689, ¶¶ 6-7 (2011), *aff'd*, 467 F. App'x 886 (Fed. Cir. 2012).  In *Becwar*, the administrative judge specifically required the appellant to "first prove that she was entitled to be promoted from GS-11 to GS-12."  *Becwar*, 115 M.S.P.R. 689, ¶ 6.  In the absence of such proof, her claim that denial of her promotion was based on her military service obligation would fail.[6]  *Id.*  The appellant has not identified any statement in the record or initial decision stating that such proof was required.  Instead, the administrative judge's analysis turned on the unavailability of duties and responsibilities at the GS-12 level after the appellant returned from military duty.  ID at 3-4.  The agency's concerns about the appellant's performance did not pertain to his eligibility for promotion to any existing GS-12 position, but instead focused on his readiness for promotion should such a position become available in the future.  *See* PFR, Tab 6 at 7; *see also* HCD (testimony of Chambers, Curell).  The appellant's argument is unavailing.

¶25    In the aggregate, the evidence does not show that the agency denied the upgrade request because the appellant was on military duty.  Instead, it shows that processing of the request was delayed because the appellant was temporarily unavailable for part of the consideration process and was on leave without pay.  *See* IAF, Tab 14 at 27-28; *see also* HCD (testimony of Chambers, Hess).  It also shows that the Protocol Office no longer needed additional GS-12 Protocol Officers after his return.  *See* HCD (testimony of Chambers, Curell); *see also* IAF, Tab 6, Subtab 2g.  The agency has thus shown that it decided not to pursue the upgrade both during and after the appellant's absence based on valid reasons

---

[6] In *Becwar*, we note, the agency declined to promote the appellant to the full performance level in a career-ladder position.  *See Becwar*, 115 M.S.P.R. 689, ¶¶ 2, 6.  Here, the appellant had already reached the full performance level.

other than the appellant's service in the Air Force Reserve. Accordingly, the agency met its burden of proof under section 4311(a).

Reemployment Claim

¶26    The appellant also argued that the agency denied him a benefit of reemployment that he would have obtained but for his absence for military duty when it did not upgrade his position after he returned from duty. *See* IAF, Tab 5 at 4, Tab 19 at 5-6; *see also* 38 U.S.C. §§ 4312, 4313(a), 4316. The administrative judge did not address this claim, which is distinct from the discrimination claim. *See Rassenfoss v. Department of the Treasury*, 121 M.S.P.R. 512, ¶ 10 (2014). We will resolve this issue without remand because the record is sufficiently developed and we can make credibility determinations without considering witness demeanor. *See id.*, ¶ 11.

¶27    In contrast to discrimination cases, an individual's rights under USERRA's reemployment provisions do not depend on an agency's motivation for action or inaction. *Id.*, ¶ 10. Instead, an agency must prove that it has met its statutory obligations to the employee. *Id.*; *see Wyatt v. U.S. Postal Service*, 101 M.S.P.R. 28, ¶ 12 (2006). An agency must consider employees who are absent on military duty for any incident or advantage of employment to which they may have been entitled had they not been absent. 5 C.F.R. § 353.106(c). In doing so, an agency must weigh whether:

> (1) The "incident or advantage" is one generally granted to all employees in that workplace and was denied in this case solely because of absence for military service;
>
> (2) The person absent on military duty was treated the same as if the person had remained at work; and
>
> (3) It was reasonably certain that the benefit would have accrued to the employee but for the absence for military service.

*Id.*

¶28    The record does not show that the position upgrade was a benefit of employment generally granted to all agency employees. An example of a

"generally granted" benefit of employment is a within-grade increase, which is granted when an employee performing at the fully satisfactory level or better accrues a certain amount of time-in-grade. The agency, we note, avers that the appellant received the within-grade increase he was due. PFR File, Tab 7 at 16. In contrast, the appellant's proposed position upgrade was not a generally granted benefit. *See* IAF, Tab 6, Subtab 2h. As the incumbent in a position at the full performance level, he was not due a career-ladder promotion. Any upgrade affecting his position would have been discretionary and based upon the agency's needs. The agency may upgrade a position when no other employee or position can absorb the duties detailed in the position upgrade request. *See* HCD (testimony of Driscoll); *see also* 5 C.F.R. § 335.103(c)(3)(ii) ("Agencies may at their discretion except the following actions from competitive procedures of this section . . . (ii) A promotion resulting from an employee's position being classified at a higher grade because of additional duties and responsibilities . . . ."). The position upgrade request here specifically stated that "[n]o other positions could absorb" the duties that the appellant was performing. IAF, Tab 14 at 21.

¶29      We cannot determine precisely what would have happened if the appellant had remained at work. The A Flight Protocol Office lost its additional high-level duties about 4 months after the upgrade request was submitted and after the B Flight Protocol Office had declared two GS-12 Protocol Officers in surplus status a few months earlier. IAF, Tab 7 at 1-2, Tab 6, Subtab 2g at 1-2. The Protocol Office no longer needed another GS-12 Protocol Officer. HCD (testimony of Curell). It is unclear whether the agency would have continued processing the upgrade request after the AFSAC support duties ended. HCD (testimony of Chambers). In any event, the appellant would have had to compete for the upgraded position because there was another GS-11 Protocol Officer in

A Flight.[7]  HCD (testimony of Driscoll).  It is not certain he would have been selected.

¶30       As for whether the position upgrade was reasonably certain but for the appellant's absence, we looked to the OPM regulation governing our adjudication of this issue, 5 C.F.R. § 353.106(c), and the Department of Labor (DOL) regulation covering nonfederal employees in *Rassenfoss*.  *See Rassenfoss*, 121 M.S.P.R. 512, ¶ 13; *see also* 20 C.F.R. § 1002.236(a).  DOL directs employers to adopt a case-by-case approach to determine whether a benefit was reasonably certain to have accrued absent the employee's military service.  20 C.F.R. § 1002.236(a).  The relevant factors for assessing the reasonable certainty that an employee would have received a discretionary promotion include the returning employee's work history, his or her history of merit increases, and the work and the pay history of employees in the same or similar position.  *Id.*

¶31       The appellant was a valued employee who had done good work at the GS-11 and 12 grade levels.  IAF, Tab 14 at 21.  He received outstanding ratings for 2012, and prior years.  *Id.* at 22-24; IAF, Tab 15, Ex. 3.  As stated above, however, he and another employee were in GS-11 positions at the full performance level, unlike the employee who was promoted to GS-12.[8]  *Compare* IAF, Tab 6, Subtab 2h, Tab 15, Ex. 9, *with* IAF, Tab 14 at 35-36.  The office needed no additional GS-12 employees.  HCD (testimony of Curell).  The appellant's performance suffered after his return, which the agency documented, *see* IAF, Tab 6, Subtab 2a, but the agency was still willing to promote him if a GS-12 position became available, *see* IAF, Tab 15, Ex. 4; *see also* HCD

---

[7] Competition is required where "there are other employees serving in similar or identical positions to whom these duties could have been assigned."  *See* IAF, Tab 6, Subtab 2m at 5 (rules 20-21).

[8] The remaining Protocol Officers were in GS-12 or GS-11/12 positions.  IAF, Tab 15, Ex. 8.

(testimony of Chambers, Curell). The agency thus met its burden to prove that the appellant had not been denied any incident or advantage of employment to which he would have been entitled had he not been absent.

Retaliation Claim

¶32     Finally, the appellant argued that the agency retaliated against him because he sought assistance from the ESGR. *See* IAF, Tab 5 at 4; *see also* 38 U.S.C. § 4311(b), (c). The appellant asserted that the criticism he received at the May 20, 2013 meeting, as well as the agency's continued unwillingness to upgrade his position, constitute retaliation. IAF, Tab 5 at 4, Tab 14 at 4-5, 9-10. The administrative judge briefly addressed this issue, finding that the appellant did not meet his burden of proof. ID at 4.

¶33     The USERRA standard of proof for a retaliation claim is set forth at 38 U.S.C. § 4311(b) and (c)(2):

> (b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, . . . or (4) has exercised a right provided for in this chapter.
>
> . . .
>
> (c) An employer shall be considered to have engaged in actions prohibited . . . (2) under subsection (b), if the person's (A) action to enforce a protection afforded any person under this chapter, . . . or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action . . . or exercise of a right.

38 U.S.C. § 4311(b), (c)(2); *see Brasch v. Department of Transportation*, 101 M.S.P.R. 145, ¶¶ 6, 10 (2006). Here, the appellant took action to enforce the protections afforded by USERRA by seeking mediation services from the ESGR. IAF, Tab 14 at 6, Tab 15, Ex. 6. He adduced no evidence, however, that the agency bore any discriminatory animus towards him and he thus failed to meet his initial burden of proof. To the contrary, the agency

established that it did not need additional GS-12 Protocol Officers at the time, and also that the appellant's supervisors were concerned about helping him overcome a decline in his performance and prepare for eventual promotion to GS-12. Accordingly, we DENY the appellant's request for corrective action.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

This Final Order constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.